479 A.2d 578

Jacqueline A. COHN, Personal Representative of the Estate of Marguerite I. Grekowicz, Deceased

v.

Terence F. McGURK and Minella D. McGurk, Appellants.

Superior Court of Pennsylvania.

Argued Jan. 19, 1984.

Filed June 22, 1984.

Raymond Peppelman, Jr., Philadelphia, for appellants.
Marc H. Jaffe, Ardmore, for appellees.

Before ROWLEY, HESTER and ROBERTS, JJ.

HESTER, Judge:

This is an appeal from the denial of appellants' Petition to Open and/or Strike Judgment entered by Confession.

The facts of the case are as follows:

On September 5, 1979, Marguerite Grekowicz, sister of appellant Terence McGurk, died in Littleton, Colorado. At the time of her death, Mrs. Grekowicz had five children, three boys and two girls ranging in age from seven to fifteen. In her Last Will, regarding the care of her children, Mrs. Grekowicz provided:

"2.2 Trustee. I appoint TERENCE McGURK as Trustee of my Trust Estate. If he shall fail to qualify or cease to act, I appoint ROSEMARY McGURK as successor Trustee. If more than one Trustee is acting at any time, any reference to Trustee hereunder shall include all Trustees.

2.3 Guardian.

a. If it becomes necessary to appoint a guardian of the person, estate, or person and estate of any of my minor children with respect to any property passing under this Will or outside thereof by reason of my death, I appoint TERENCE and MINELLA McGURK, or the survivor of them, or in the event of a divorce, TERENCE McGURK, as guardian of the person and estate of such minor children, to serve without bond.

b. I recognize that serving as the guardian of the person and estate of my minor children may result in economic hardship to the guardian. Accordingly, pursuant to Section 1484 of the California Probate Code, I herewith specifically authorize any person nominated in this Will and serving as guardian of the person and estate of my minor children to utilize such funds of the guardianship estate as are reasonably necessary to offset any economic burdens occasioned to the guardian by virtue of his acting in such capacity. By way of illustration, but not by way of limitation, I expressly authorize the guardian to utilize the guardianship estate to expand, enlarge, or remodel the existing home of the guardian or to purchase a larger home, if reasonably required, in order to permit all of my minor children to reside with such guardian in comfort. The reasonableness of the need to enlarge the guardian's present home, or to purchase a larger one, as the case may be, shall depend in part on (i) the number and ages of children for whom the guardian of the person is required to care (including his or her own children), and (ii) the size of the guardianship estate. Such guardian may also utilize guardianship funds to pay any increases in living expenses occasioned by such guardianship, including but not limited to increases in homeowners' fire and casualty insurance, property taxes incurred by the remodeling or expansion of said guardian's home or the purchase of a new home, utility bills and food bills. All such expenses shall be charged in equal shares against the guardianship estate of each of my minor children. The guardian shall also be permitted to reside with my children in my personal residence, although title to such residence shall remain in my Trust Estate, as hereafter defined until some future disposition is made to my beneficiaries."

At the time of Mrs. Grekowicz's death, appellants and their three children resided in a three-bedroom dwelling in Pennsylvania. Appellant Terence McGurk was earning approximately $40,000.00 per year as the owner of a service

station. While it is disputed whether appellee agreed to give appellants $60,000.00 pursuant to the quoted portions of the Will or whether that amount was to be in the form of a loan from the estate, it is undisputed that Mr. McGurk had consulted the appellee before deciding to purchase a new home to accommodate the decedent's five children. Appellants purchased a six-bedroom home for $205,000.00.

Relying upon their understanding that they would receive a $60,000.00 gift from the decedent's estate, appellants deposited a down payment of $20,000.00, which was taken from their children's college education fund, upon the large residence. However, a disagreement arose as to whether appellants would receive the $60,000.00 as a gift from the estate as provided for in the Will, or whether the $60,000.00 constituted a loan from the estate.[1] In addition, appellants and appellee disagreed as to whether the money would be paid from funds transferred from decedent's general estate to her children's guardianship estate within a year from the date of purchase of appellants' new residence.

At the closing of the purchase of appellants' new residence, appellee, through her attorney, advised appellants that they would be required to execute a mortgage and note in favor of the estate, otherwise the $60,000.00 would not be forthcoming. Appellants signed the mortgage documents but allege this was done under duress, otherwise they would have forfeited the $20,000.00 deposit which had been withdrawn from their children's college fund.

The mortgage, bond and warrant required that appellants repay the $60,000.00 by December 10, 1980 (one year from the closing of the transaction.) In addition, said documents contained the usual provisions for the payment of 6% interest annually and costs of suit and an attorney's commission of 5% for collection in the event of default.

1. It is to be noted that in the event the loan was to be repaid by appellants, they contend that appellee advised them it would not be due until they sold their new residence. Appellee contends that appellants were to repay the loan within one year.

On January 5, 1983, appellee confessed judgment against appellants for $71,493.37, together with future interest, attorneys' fees and costs. In response to appellee's Confession, appellants filed a Petition to Open and/or Strike Judgment Entered by Confession alleging those contentions set forth above.

Following a hearing wherein appellants' witnesses were not permitted to testify as to what had occurred at the settlement due to the parol evidence rule, the hearing court denied appellants' Petition. It is from said denial that appellants have appealed.

Following the filing of appellants' Notice of Appeal on May 3, 1983, appellee filed a Motion to Quash the Appeal for Mootness. Therein appellee alleged that the decedent's children no longer lived with appellants and that since appellants had sold their new residence and repaid the $60,000.00 to appellee, the appeal was moot. Appellants contend that they repaid the $60,000.00 only because it was necessary to enable them to deliver clear title to the property.

Appellants failed to answer appellee's Motion to Quash and this Court, on October 18, 1983, quashed the appeal. Subsequently, appellants filed an Application for Reconsideration in which they averred that as a result of the inadvertence of counsel, the answer was not filed. Appellants denied that the appeal was moot since appellee was attempting to collect interest on the loan and appellants had incorporated by reference the arguments set forth in their brief. One of the arguments was that the lower court erred in not permitting testimony as to the alleged inducements made by appellee to the effect that funds from the general estate would be transferred to the guardianship estate in order to permit appellants to repay the $60,000.00. Appellants further aver that the above-mentioned testimony should have been admitted to clear up the alleged ambiguities in the mortgage documents.

Upon consideration of appellants' Application for Reconsideration, we reinstated their appeal.

In considering this appeal, we will first address appellee's contention that appellants have waived any arguments concerning their payment of interest on the mortgage. Appellee, in support of this allegation, contends that appellants did not raise this issue in either their: 1) Petition to Open and/or Strike Judgment; 2) testimony presented at the hearing or in their offer of proof at the hearing; 3) Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b); or 4) brief filed in this matter.

■ We must disagree. In appellants' Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b), appellants, in paragraph 4, specifically assert:

Defendants [appellants] respectfully assert that the testimony offered by them would have shown that the monies to repay the note which they signed were promised to them in their capacity as guardians by Jacqueline Cohn, that such funds were never released to them and that they were induced to enter into the notes by such promises and that the refusal of the court to hear that testimony was error.

In that the funds required to repay the note not only include the $60,000.00 principal, but also 6% interest per annum interest and an attorney's commission for collection, appellants have properly preserved this issue for appeal.

Regarding the merits of the aforementioned issues raised by appellants, they center upon whether the parol evidence rule barred the admission of testimony by appellants to demonstrate that there were two separate oral agreements entered into between appellants and appellee prior to the execution of the mortgage. One of the agreements, appellants contend, was made prior to the signing of the mortgage and that appellee allegedly agreed to give appellants sufficient funds to enable them to purchase a new home in order to accommodate decedent's children, as specifically authorized in Section 2.3(b) of the decedent's Will. That section of the document states "By way of illustration, but not by way of limitation, I expressly authorize the guardian to utilize the guardianship estate to expand, enlarge, or

remodel the existing home of the guardian or to purchase a larger home, if reasonably required, in order to permit all of my minor children to reside with such guardian in comfort."

The second agreement appellants allege was contemporaneous with the signing of the mortgage is that appellants, not anticipating the appearance of the estate's attorney at the real estate settlement with the mortgage documents as hereinabove set forth, signed the mortgage only after being assured that the funds from the general estate would be transferred to the guardianship estate within the one year payment period of the mortgage to enable appellants to repay the mortgage. In support of the alleged agreements, appellants offered the testimony of appellant Terence McGurk, attorney Dennis Sheedy, appellants' attorney at the time of the closing on their residence, and the purchaser's affidavit, which states:

> The purchases (sic) have signed a second mortgage with bond and warrant payable Jacqueline A. Gohn (sic) to protect the personal representation (sic) of Estate of Marguerite I. Grekiwocz (sic) deceased until December 1980, the expected date of distribution of Estate of the purchase as residuary legatees in a trust capacity ...

■ We believe the present case is controlled by our decision in *Kravitz v. Mudry*, 200 Pa.Super. 240, 189 A.2d 311 (1963). The facts in *Kravitz, supra*, were as follows:

> The parties on November 3, 1956, entered into a written agreement of sale for a house under construction at 1103 Chesworth Road, Philadelphia. The com-plaint averred that prior to entering into the agreement of sale the plaintiffs-purchasers pointed out to the defendant certain defects in materials and workmanship and in order to induce the plaintiffs to enter into the agreement of sale the defendant agreed to remedy the defects before settlement; that the defects were not remedied and that plaintiffs refused to take title or make settlement; that the defendant agreed to remedy the defects and the plaintiffs made settlement in reliance upon this oral agreement of the defendant; that because of the failure of the defend-

ant to remedy the defects the plaintiffs sustained damage to the extent of $3597.96.

*Kravitz, supra* 189 A.2d at 312. The defendant in *Kravitz, supra,* as appellee in the present case, contended that the evidence of the prior oral inducement to sign the agreement of sale was inadmissible due to the written agreement constituting the entire agreement between the parties.

In rejecting defendant's argument, we stated:

We believe that the defendant's position as to the law is untenable, even though the agreement of sale is a full and complete agreement precluding the admissibility of any prior understandings, the agreement covered the construction of an unfinished house. The builder still had the duty of constructing a house according to specifications reasonably free of defects, *Stewart v. Trimble,* 15 Pa.Super. 513 (1901). *If the builder or vendor failed to properly construct the house the purchaser could refuse to accept the deed or to make settlement. Under the circumstances the waiver of this right to refuse to make settlement furnishes a valid consideration for the agreement by the vendor to make the necessary repairs after settlement. Thus, the cause of action is based on an entirely separate agreement, distinct from the agreement of sale. Since this separate agreement is supported by consideration it is legally enforceable and evidence to establish this agreement is clearly admissible.* (emphasis added).

*Kravitz, supra,* 189 A.2d at 312. We, as the court in *Kravitz, supra,* conclude that the alleged oral contract entered into between appellant Terrence McGurk and appellee some time before the mortgage was executed was an entirely separate agreement supported by consideration. This consideration would consist of providing sufficient funds from the estate to appellants in order to permit them to provide reasonable living accommodations for the deceased's five children as provided for in her Will.

■ As to the admissibility of parol evidence regarding the alleged second oral agreement to the effect that if

appellants signed the mortgage, funds to repay said mortgage would be transferred from the general estate to the guardianship estate and then made available to appellants, we hold that parol evidence would be admissible based not only on the fact that this was a separate agreement, as in *Kravitz, supra,* but also, that the mortgage was signed by appellants upon the alleged representations made to them by appellee and/or her attorney. *Greenwood v. Kadoich,* 239 Pa.Super. 372, 357 A.2d 604 (1976).

In addition, parol evidence is admissible concerning the alleged second agreement based upon the following:

> The parol evidence rule, has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by accident or mistake.

*Dunn v. Orloff,* 420 Pa. 492, 500, 218 A.2d 314, 316 (1966); quoting *Boyd Estate,* 394 Pa. 225, 233, 146 A.2d 816, 820 (1958). *See also Gitt v. Myers,* 273 Pa.Super. 310, 315, 417 A.2d 664, 667 (1979). Appellants sought to introduce testimony that appellee, at a hearing held in Colorado, stated that her intention as to the mortgage agreement was that the $60,000.00 would not be due the estate until the residence which appellants purchased with this money had been sold, or as long as the decedent's children resided with appellants. This evidence would not be barred by the parol evidence rule.

Further, parol evidence regarding the alleged second agreement would be admissible as the result of appellants' assertion that they were under duress when they signed the mortgage documents. *See:* 15 P.L.E., *Evidence,* § 305. Specifically, appellants contend that if they had not signed the mortgage documents, they would have lost the $20,-000.00 down payment on their new residence and would have been left homeless since they had sold their former residence. Certainly, this evidence, if found to be true,

would constitute a situation of duress caused by the alleged misrepresentations of the appellee.

Therefore, we must reverse and remand for a hearing to permit appellants to introduce that testimony which we have held does not violate the parol evidence rule.

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.